USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/23/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

JOHN P. DASH III,                    :        18-cv-4807 (RWL)
                                     :
                    Plaintiff,       :        **OPINION AND ORDER**
                                     :
        - against -                  :
                                     :
BANK OF AMERICA CORPORATION and      :
REAL TIME RESOLUTIONS, INC.,         :
                                     :
                    Defendants.      :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff John P. Dash ("Dash"), proceeding *pro se*, brings this action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.  He alleges that Defendant Bank of America Corporation ("BAC") has violated the statute by, *inter alia*, using improper means to collect on debt from a real estate mortgage loan.[1]  BAC has moved for dismissal pursuant to Rules §§ 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, the motion is GRANTED and the action is dismissed with prejudice.

---

[1] As discussed further below, named defendant Real Time Resolutions, Inc. is no longer a defendant in this case.

1

<u>Factual Background</u>[2]

On March 1, 2006, Dash, a New York resident, obtained a mortgage from non-party Bank of America, N.A. for real property located at 2325 NW 9th Place, Cape Coral, Florida.[3] (Complaint ¶¶ 2, 4; Ex. A ("Note") and B ("Mortgage") attached to Motion to Dismiss, dated March 8, 2006). Dash made the last mortgage payment on December 30, 2008, but the account then went into default because "plaintiff was attempting to get a short sale approved." (Complaint ¶ 5.) Almost seven years later in September 2015, BAC "started changing the last payment date to re-age the debt." (Complaint ¶ 6.) Dash alleges that this practice violated the Fair Debt Collection Practices Act, which prohibits a debt collector from attempting to collect on a debt more than six years after the last payment date. (Pl. Opp. ¶ 1.) Dash alleges that BAC has "a history of trying to either collect on time-barred debts or ruining consumers credit reports by re-aging or changing last payment dates or dates of first delinquencies." (Complaint ¶ 6.)

---

[2] In accordance with the standard for assessing a motion to dismiss, the following facts are derived from Plaintiff's Complaint, dated May 31, 2018 (Dkt. No. 1), and accepted as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). In addition to the Complaint, the Court also draws upon statements and documents incorporated into the Complaint by reference, as well as matters of which judicial notice may be taken, including public records and documents that Plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (citing *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

[3] In his Complaint and opposition papers, Dash incorrectly states that Defendant Bank of America Corporation was the mortgagee. But in fact, the face of the mortgage and note indicate that Bank of America, N.A. is the actual mortgagee. (Plaintiff's Opposition to Motion to Dismiss ("Pl. Opp."), Ex. D; Ex. A and B attached to the Motion to Dismiss.)

The Complaint alleges two causes of action.  First, Dash alleges that BAC violated 15 U.S.C. § 1692, "1692k(b)(1)i".[4]  Dash claims that as a result of this conduct, he suffered damages and "future damages" including "worry, mental anguish, distress and frustration."  (Complaint ¶ 11.)  He seeks actual damages, punitive damages, and attorneys' fees.[5]  (Complaint ¶¶ 11-14.)

In the Second Cause of Action, Dash alleges that BAC violated 15 U.S.C. § 1692k because it "negligently failed to comply with the requirements imposed under the FDCPA, including but not limited to" (i) "failing to validate the debt;" (ii) "false representation or legal status of the debt;" (iii) "frequency and persistence of noncompliance, the nature of such noncompliance and the extent to which was intentional;" and (iv) "threaten[ing] to take legal action [against Dash]."  (Complaint ¶¶ 15-16.)  Again, Dash claims to have suffered damages and "future damages" including "worry, mental anguish, distress and frustration" (Complaint ¶ 17.)  On the Second Cause of Action, Dash seeks actual damages and attorneys' fees.[6]  (Complaint ¶¶ 18-19.)

---

[4] The First Cause of Action cites "15 U.S.C. § 1692k(b)(1)i", but "(i)" does not exist in the statute.  The Court construes that 15 U.S.C. § 1692k(b)(1) was intended.  This section states: "In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors (1) . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. . . ."

[5] On the First Cause of Action, Dash alleges that he is entitled to attorneys' fees "pursuant to 15 U.S.C. § 1681k(a)(3)."  This provision is part of the Fair Credit Reporting Act – the law that formed the basis for Dash's separate lawsuit against BAC, discussed in detail below.  Even if this legislation were relevant here, that provision does not involve attorneys' fees; nor does it include a Subsection 3.

[6] On the Second Cause of Action, Dash alleges that he is entitled to attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3).  That section provides, in relevant part: "[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . (3) in the case of any

<u>Procedural Background</u>

This action is not the first time that Dash has raised claims against BAC in connection with his Florida residential mortgage.  On May 30, 2017, Dash filed a case in this District, bearing the case number 17 Civ. 4122, assigned to Judge William H. Pauley, III (hereinafter, the "Prior Litigation").  Though both lawsuits relate to the same mortgagee-mortgagor relationship, the primary difference between the Prior Litigation and this instant litigation is that the Prior Litigation made allegations against BAC based upon the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., ("FCRA"), whereas this lawsuit makes allegations based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA").

The Prior Litigation lasted for approximately five months.  In that relatively brief period, Dash filed an Amended Complaint, a Second Amended Complaint, and a Third Amended Complaint.  (Prior Litigation, Dkt. Nos. 8, 11, and 15.)  In those pleadings, Dash alleged that in July and August of 2014, BAC began misreporting loan accounts in his credit reports for several months.  (Prior Litigation, Dkt. No. 1 at ¶ 5-7.)  Dash alleged that he demanded a "reasonable investigation" into the matter and that it be corrected, and that BAC was "negligent" and "willful" with respect to the alleged reporting errors.  (*Id.* at ¶ 7-8.)

The Prior Litigation asserted two causes of action under the FCRA.  First, Dash claimed that BAC failed to comply with the reinvestigation requirement of 15 U.S.C. § 1681i, causing him various unspecified damages.  Second, he claimed that BAC failed to

---

successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

comply with various mandatory procedures under the FCRA, including (i) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, pursuant to 15 U.S.C. § 1681e(b); (ii) failing to comply with the reinvestigation requirements of 15 U.S.C. § 1681i; (iii) providing Dash's credit file to third-party companies without determining that those companies had a permissible purpose to obtain it; and (iv) failing to provide Dash with his credit file pursuant to 15 U.S.C. § 1681g. (*Id.* at ¶ 15.)

The parties appeared for an initial pre-trial conference on September 1, 2017 before Judge Pauley, and on that same day a case management schedule was entered. (Prior Litigation, Dkt. No. 14.) About one month later, Dash filed his Third Amended Complaint. (Prior Litigation, Dkt. No. 15.)

On October 3, 2017, with no explanation on the docket, Dash filed a "Notice of Dismissal with Prejudice" in which he "hereby dismisses this action, with prejudice, and without costs, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i)." (Prior Litigation, Dkt. No. 16.) Dash's Notice of Dismissal terminated the Prior Litigation, and no further filings were made on that docket.

Approximately seven months after termination of the Prior Litigation, on May 31, 2018, Dash filed this action.[7] Dash initially named two Defendants: BAC and Real Time Resolutions, Inc. ("Real Time"). Real Time was a debt collection agency hired by non-party Bank of America, N.A. to collect on the past-due mortgage. (Pl. Opp., Ex. D, Contract Between Bank of America N.A. and Real Time, dated December 7, 2017.) On

---

[7] Dash refers to the Prior Litigation as having been "settled" in September or October 2017. (Pl. Opp. at ¶ 4.; Pl. Sur-reply (Dkt. No. 32) at ¶ B.) BAC does not reference settlement of the Prior Litigation in its motion papers or reply.

August 8, 2018, Dash voluntarily dismissed his claims against Real Time.  (Dkt. No. 24.)

Thus, BAC is the only remaining defendant.  On September 26, 2018, the parties

consented to the jurisdiction of the undersigned for all purposes.  (Dkt. No. 27.)

BAC moved for dismissal on November 5, 2018.  The motion papers included a

Memorandum of Law ("Def. Mem.") and the Declaration of Jason R. Lipkin ("Lipkin Decl."),

and Exhibits A through E.  (Dkt. No. 29.)[8]  Dash filed his opposition on November 8, 2018

in the form of a two-page numbered letter to the Court, attaching Exhibits A through D

("Pl. Opp.").  (Dkt. No. 30.)  BAC filed a Reply Memorandum of Law on December 17,

2018 ("Def. Reply").  (Dkt. No. 31.)  Four days later, Dash filed a sur-reply consisting of a

narrative letter of approximately one-page, and 58 pages of unlabeled exhibits ("Pl. Sur-

reply").[9]  (Dkt. No. 32.)

### Legal Standards

A.    Standard for Reviewing *Pro Se* Pleadings

Dash proceeds *pro se* in this litigation, as he did in the Prior Litigation.  As an initial

matter, the Court notes the well-settled principle that "[a] document filed *pro se* is 'to be

liberally construed,' and 'a *pro se* complaint, however, inartfully pleaded, must be held to

less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus,*

---

[8] BAC attached all motion papers to its Motion to Dismiss.  (*See* Dkt. No. 29.)

[9] Dash did not receive permission to file a sur-reply as required by Part III(E) of this Court's Individual Rules.  *See also* Fed. R. Civ. P. 7(a)(7).  Nevertheless, mindful of its duty to extend special solicitude to *pro se* plaintiffs, the Court has exercised its discretion to accept and consider the sur-reply.  *See Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312, 2013 WL 1809772, at *1 (S.D.N.Y. April 30, 2013) (reviewing sur-reply of *pro se* litigant in connection with motion to dismiss); *accord Gadson v. Goord,* No. 96 Civ. 7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (same).

551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). A court must interpret such complaints "to raise the strongest arguments they suggest," the idea being that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

That said, "even *pro se* plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor does *pro se* status excuse a party from meeting deadlines. *Santos v. General Electric Co.,* No. 10 Civ. 6948, 2011 WL 5563544, at *7 (S.D.N.Y. Sept. 28, 2011) ("plaintiff's *pro se* status does not excuse [his] noncompliance with statutory deadlines"); *Lobaito v. Chase Bank*, No. 11 Civ. 6883, 2012 WL 3104926, at *5 (S.D.N.Y. July 31, 2012), *affirmed*, 529 F. App'x 100 (2d Cir. 2013) (summary order) (same).

B.    Standards for Motion to Dismiss

BAC seeks dismissal based on three different provisions of the Federal Rules of Civil Procedure: Rules 12(b)(1), 12(b)(3) and 12(b)(6).

On a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. National Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *affirmed*, 561 U.S. 247 (2010). "The plaintiff

bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transportation System, Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). In deciding a Rule 12(b)(1) motion to dismiss, the Court "'must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Morrison,* 547 F.3d at 170 (quoting *Natural Resources Defense Council v. Johnson,* 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation omitted)). In deciding the motion, a court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue . . . ." *J.S. ex rel. N.S. v. Attica Central Schools,* 386 F.3d 107, 110 (2d Cir. 2004); *see also Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings").

On a motion to dismiss pursuant to Rule 12(b)(3) for improper venue, "the plaintiff bears the burden of establishing that venue is proper." *Luxexpress 2016 Corp. v. Government of Ukraine*, No. 15 Civ. 4880, 2018 WL 1626143, at *4 (S.D.N.Y. March 30, 2018) (quoting *French Transit, Ltd. v. Modern Coupon Systems, Inc.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994)). When considering a motion to dismiss for improper venue under Rule 12(b)(3), "the plaintiff need only make a *prima facie* showing of venue." *Gulf Insurance Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (brackets omitted) (quoting *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986) (citations omitted)). As with a motion to dismiss for lack of subject matter jurisdiction, "in deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper. The Court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Concesionaria DHM,*

*S.A. v. International Finance Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *U.S. Environmental Protection Agency ex rel. McKeown v. Port Authority of New York and New Jersey*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

Finally, to survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In considering a motion to dismiss for failure to state a cause of action, a district court "accepts all factual claims in the complaint as true, and draws all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted). However, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level . . . *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quotation marks and brackets omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

For the purposes of considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). In that regard, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y.1994)).[10]

C.   FDCPA Standards

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and . . . to protect consumers against debt collection abuses." *Vincent v. The Money Store,* 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)). To further these ends, the FDCPA "establishes

---

[10] As relevant here, the Court may consider Dash's Note and Mortgage, as both documents are referenced in the Complaint and form the basis for Dash's claims. BAC's motion papers attach the two documents, both dated March 8, 2006. (Dkt. No. 29, Ex. A, B). The Court may also consider Dash's Prior Litigation, which is a matter of public record, referenced in Dash's opposition papers (Pl. Opp. at ¶ 4), and pleadings from which are attached to BAC's moving papers. (Dkt. No. 29, Ex. C, D.)

certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir. 2001). Among those rights, the FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson v. Healthcare Financial Services, Inc.,* 516 F.3d 85, 91 (2d Cir. 2008) (citing 15 U.S.C. § 1692k).

As relevant here, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. A debt collector also "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Such prohibited misrepresentations include, but are not limited to, the "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Finally, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

To establish a violation under the FDCPA: (1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt; (2) the defendant collecting the debt must be considered a "debt collector" as defined by the statute; and (3) the defendant must have engaged in an act or omission in violation of FDCPA. *Plummer v. Atlantic Credit and Finance, Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014) (quoting *Healy v. Jzanus Ltd.,* 02 Civ. 1061, 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002)); *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010).

D.   Standards for Res Judicata and Collateral Estoppel

The common law doctrines of res judicata and collateral estoppel are "related but distinct [and] operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

"Res judicata [or claim preclusion] precludes parties from litigating issues 'that were or could have been raised' in a prior proceeding." *Perez v. Danbury Hospital,* 347 F.3d 419, 426 (2d Cir. 2000) (quoting *Monahan v. New York City Department of Corrections,* 214 F.3d 275, 284-85 (2d Cir. 2000)); *Irish Lesbian and Gay Organization v. Giuliani,* 143 F.3d 638, 644 (2d Cir. 1998). "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (quoting *Monahan,* 214 F.3d at 284-85); *see also Truong v. Hung Thi Nguyen*, No. 10 Civ. 386, 2011 WL 1198254, at *3 (S.D.N.Y. March 3, 2011).

Collateral estoppel operates slightly differently than res judicata. "Collateral estoppel [or issue preclusion] prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2d Cir. 1991) (citing *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326-27 (1955)). A party asserting collateral

estoppel must establish four elements: "(1) the issues in the prior proceeding and the current proceeding are identical; (2) the issue raised in the current action was, in fact, actually decided in the prior proceeding; (3) there was a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the issue previously litigated and decided was necessary to support a valid and final judgment on the merits." *GemShares, LLC v. Kinney*, No. 17 Civ. 844, 2017 WL 2559232, at *8 (S.D.N.Y. June 2, 2017) (citing *In re PCH Associates*, 949 F.2d 585, 593 (2d Cir. 1991)).

Discussion

BAC asserts several arguments in support of its motion to dismiss. Three of those arguments each independently require dismissal of the Complaint. First, Dash's action is barred by the doctrine of res judicata based on the Prior Litigation. Second, Dash's action is barred by the applicable one-year statute of limitations within the FDCPA. Third, Dash's action fails to state a claim because BAC is not actually a "debt collector" within the meaning of the FDCPA.[11]

A.    Dash's Action is Precluded by the Prior Litigation

Citing the Prior Litigation, BAC argues that "collateral estoppel and/or res judicata bar Plaintiff's FDCPA claim as a matter of law" and the action should therefore be dismissed. (Def. Mem. at 7-8.) BAC is correct.

As outlined above, courts consider a three-factor analysis to determine whether a plaintiff's claim is precluded under res judicata. A defendant must show that "(1) the

---

[11] BAC asserts additional arguments based on lack of subject matter jurisdiction and improper venue. The Court has considered these arguments and determined them to be without merit. Nevertheless, dismissal is warranted based on BAC's three other arguments discussed below.

previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (quoting *Monahan,* 214 F.3d at 284-85); *see also Truong v. Hung Thi Nguyen*, No. 10 Civ. 386, 2011 WL 1198254, at *3 (S.D.N.Y. March 3, 2011).

As for the first factor, the Prior Litigation did not conclude with a trial verdict or judicial decision; it concluded with Dash's filing of a "Notice of Dismissal with Prejudice." (Prior Litigation, Dkt. No. 16.)  This distinction, however, is irrelevant for purposes of the res judicata analysis.  "Res judicata bars 'subsequent litigation of any ground of recovery that was available in [a] prior action, whether or not it was actually litigated or determined.'" *Falardo v. New York City Police Department,* 566 F. Supp. 2d 283, 285 (S.D.N.Y. 2008) (quoting *Balderman v. United States Veterans Administration,* 870 F.2d 57, 62 (2d Cir. 1989)).  "A judgment on the merits for purposes of res judicata is not necessarily a judgment based upon a trial of contested facts."  *Gianatasio v. D'Agostino,* 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012) (quoting *Dillard v. Henderson*, 43 F. Supp. 2d 367, 369 (S.D.N.Y. 1999)).

Rather, a discontinuance with prejudice serves as a final adjudication on the merits.  *NBN Broad., Inc. v. Sheridan Broadcasting Networks, Inc.,* 105 F.3d 72, 78 (2d Cir. 1997) ("a discontinuance with prejudice is deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted, or which could have been asserted, in the suit"); *Allianz Insurance Co. v. Lerner,* 296 F. Supp. 2d 417, 421 (E.D.N.Y. 2003) ("discontinuance with prejudice has the same effect as a final judgment on the merits for

res judicata purposes"); *accord Cora v. Ranjan,* 98 A.D.3d 598, 599, 949 N.Y.S.2d 503, 504 (2d Dep't 2012); *Fifty CPW Tenants Corp. v. Epstein,* 16 A.D.3d 292, 294, 792 N.Y.S.2d 58, 60 (1st Dep't 2005) (stipulation of discontinuance with prejudice is a judgment on the merits for the purposes of *res judicata*).[12] Accordingly, the fact that Dash discontinued the action with prejudice is enough to satisfy the requirement that there was an adjudication on the merits in the Prior Litigation.

Second, the parties involved are identical in the Prior Litigation as the current litigation: John P. Dash III as Plaintiff and Bank of America Corporation as Defendant. Although Real Time was initially named as a defendant, a stipulation of voluntary dismissal removed that party, leaving only Dash and BAC. (Dkt. No. 25.) Therefore, the parties are identical.

Third, and finally, the claims asserted in this action could have been asserted in the Prior Litigation. Parties are "barred from relitigating not only matters actually litigated in [a] preceding action but also any matters that could have been litigated in that action . . . [if those matters involve] the same nucleus of facts as that of any claim asserted in the prior action." *West v. Ruff*, 961 F.2d 1064, 1065 (2d Cir. 1992) (citing *Smith v. Russell Sage College,* 54 N.Y.2d 185, 192-93 (1981); *Reilly v. Reed,* 45 N.Y.2d 24 (1978). That is the case here. The allegations made in both the Prior Litigation and this one stem from the identical "nucleus of facts," namely Dash's residential mortgage and BAC's conduct

---

[12] In cases before a federal court on the basis of a federal question, the court applies federal common law in considering the preclusive effects of res judicata. *Taylor v. Sturgell* 553 U.S. 880, 891 (2008) (holding that a federal court vested with federal question jurisdiction must apply federal common-law res judicata rules); *accord Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 88, 96 N.E.3d 737, 754 (2018) (same).

with respect to the mortgage. Moreover, had Dash wanted to add a claim to his pleadings in the Prior Litigation, he had ample opportunity to do so. Indeed, Dash filed three amended complaints in the Prior Litigation without adding the legal claim Dash asserts here, despite the fact that both claims arising out of the same factual subject matter.

In his Opposition, Dash does not address the res judicata argument in any significant detail. He states that "Plaintiff has never filed a FDCPA against BAC previously . . . [and] has only previously filed a Fair Credit Reporting Act case in May 2017, which was settled in September 2017." (Pl. Sur-reply at ¶ B.) But rather than helping his case, this statement only illuminates the reason for applying res judicata; Dash could have brought his FDCPA claim against BAC in the Prior Litigation but failed to do so.

Moreover, the Complaint in this case does not allege any new conduct subsequent to resolution of the Prior Litigation. In other words, there are no new events concerning BAC's conduct with respect to Dash's mortgage that could not have been raised in the Prior Litigation. Yet Dash waited over seven months before initiating this litigation after discontinuance of the Prior Litigation. These circumstances reflect precisely the sort of activity that the doctrine of res judicata seeks to prevent: relitigating issues that were, or should have been, already addressed through a single action. *See, e.g.*, *EDP Medical Computer Systems, Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (*"Res judicata* is a rule of fundamental repose important for both the litigants and for society' [because] [i]t 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication'") (internal citations omitted); *Alaimo v. General Motors Corp.*, No. 07 Civ. 7624, 2008 WL 4695026, at *6 n.2 (S.D.N.Y. Oct. 20, 2008) ("the fundamental principles

of *res judicata* [are] to prevent duplicative litigation, conserve judicial resources and prevent inconsistent decisions").

In short, Dash cannot now raise new claims regarding his mortgage that could have been raised in the Prior Litigation. Dash could have asserted his FDCPA claims against BAC in the Prior Litigation alongside his FCPA claims. He did not. That matter was long ago settled between the parties, and the case dismissed with prejudice. For this reason, this action must be dismissed pursuant to Rule 12(b)(6) based on the doctrine of res judicata.[13]

B.    Dash's FDCPA Claims Are Barred By the Statute of Limitations

Even if the Complaint were not barred by res judicata, Dash's claims would still be barred under the applicable statute of limitations contained in the FDCPA.

In relevant part, 15 U.S.C. § 1692k(d) provides: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs." *See also Wright v. Zabarkes,* 347 F. App'x 670, 671-72 (2d Cir. 2009) ("an action under the FDCPA must be brought within one year from the date the violation occurred"); *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (dismissing FDCPA action against bank because all claims under the FDCPA must be brought "within one year from the date on which the violation occurs"); *Shieh v. Flushing*

---

[13] BAC argues that Dash's claims are barred by "collateral estoppel and/or res judicata." (Def. Mem. at 7.) Although courts sometimes refer to these two doctrines interchangeably, res judicata is the better doctrinal fit for this case. Collateral estoppel, or issue preclusion, bars the relitigation of *issues* previously decided in another action (rather than res judicata, which bars the relitigation of *claims*). Here, the specific "issue" of FDCPA liability was never raised or decided in the Prior Litigation.

*Branch, Chase Bank USA, N.A.*, No. 11 CV 5505, 2012 WL 2678932, at *6 (E.D.N.Y. July 6, 2012) (same).  The one-year period begins to run on "the date when [the consumer] receives an allegedly unlawful communication." *Somin v. Total Community Management Corp.,* 494 F. Supp. 2d 153, 158-59 (E.D.N.Y. 2007) (dismissing FDCPA claim as time-barred under one-year limitations period); *Donchatz v. HSBC Bank USA, N.A.*, No. 14-CV-194, 2015 WL 860760, at *9-10 (W.D.N.Y. Feb. 27, 2015) (same), *affirmed*, 648 F. App'x 158 (2d Cir. 2016).

Here, Dash alleges that BAC "re-aged the debt" in violation of the FDCPA in or about September 2015.[14]  (Complaint, ¶ 6.)  Accordingly, the statute of limitations for his claims expired no later than September 30, 2016 – over a year before he filed the instant Complaint in May 2018.

The plain fact is that Dash had notice of any alleged FDCPA violations by September 2015, yet he waited more than three years to file his lawsuit.  Consequently, because of the one-year statutory deadline imposed by the FDCPA, the Complaint must be dismissed for failure to state a cause of action upon which relief can be granted pursuant to Rule 12(b)(6).[15]

C.     BAC is not a "Debt Collector" for Purposes of FDCPA

Even if Dash could survive the res judicata and statute of limitations bars, his Complaint would still be subject to dismissal for failure to state a cause of action upon

---

[14] Implicit in Dash's allegation is that he learned of BAC's having re-aged the debt through a communication he received in or about September 2015.

[15] Dash does not address BAC's statute of limitations arguments in any detail in his Opposition.

which relief could be granted because BAC is not a proper defendant under the FDCPA. As BAC correctly argues, it is not a "debt collector" within the meaning of the statute.[16]

Under the FDCPA, the term "debt collector" means: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Meanwhile, the FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4); *see also Vincent v. The Money Store*, 736 F. 3d 88, 98 (2d Cir. 2013). Although debt collectors are subject to the FDCPA, creditors generally are not. The FDCPA "limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts." *1077 Madison Street LLC v. March*, No. 14-CV-4253, 2015 WL 6455145, at *3 (E.D.N.Y. Oct. 26, 2015) (citing *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d Cir. 1998)).

Additionally, "a creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." *Burns v. Bank of America*, 655 F. Supp. 2d 240, 255 (S.D.N.Y. 2008) (quoting *Doherty v. Citibank (South*

---

[16] BAC argues that the Complaint should be dismissed because Dash incorrectly named "Bank of America Corporation" in this lawsuit rather than "Bank of America, N.A." The former is merely a holding company, BAC asserts, and therefore never formally serviced Dash's loan or attempted to collect on the debt owed within the meaning of the FDCPA. (Def. Mem. at 10.) The face of the Note and Mortgage indicate that the agreements are between Dash and non-party "Bank of America, N.A." This may be so, but this argument for dismissal is unavailing. Courts construe the pleadings of *pro se* plaintiffs liberally. *Triestman,* 470 F.3d at 474-75. To the extent that Dash improperly named an affiliated entity, such an error could be forgiven at this early stage of the litigation, especially if it could be cured through an amendment of the pleadings. For reasons discussed elsewhere in this opinion, however, such an amendment would be futile.

*Dakota) N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005), *affirmed*, 360 Fed. App'x. 255 (2d Cir. 2010)).  Where an entity is assigned "a debt in default solely for the purpose of facilitating collection of such debt for another," it falls outside the definition of a "creditor" under the FDCPA.  *See* 15 U.S.C. § 1692a(4); *Johnson-Gellineau v. Steine & Associates*, P.C., No. 16 Civ. 9945, 2018 WL 1605574, at *8 (S.D.N.Y. March 29, 2018).

The distinction between creditors and debt collectors was highlighted in a recent opinion by the U.S. Supreme Court, *Henson v. Santander Consumer USA Inc.*, 582 U.S. ___, 137 S. Ct. 1718 (2017).  There, the Court considered the possible definitions of a "debt collector" and what sorts of entities should be subject to the FDCPA.  The Court held that "entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not debt collectors within the meaning of the statute.  *Id.* at 1721.

BAC does not meet the definition of a "debt collector" within the meaning of the FDCPA.  Dash himself acknowledges that BAC – or, more correctly, Bank of America, N.A. – merely contracted its debt collection services to Real Time.  (Pl. Opp., Ex. D.)  The Complaint does not articulate any activities that BAC engaged in, separate and apart from Real Time, that would constitute violations of the FDCPA.

Dash's opposition papers do not address BAC's argument in this regard, except by stating that BAC violated the FDCPA and attaching voluminous documents and statements bearing the Bank of America corporate logo, some dating back to 2006, which discuss the terms of his mortgage.  (*See* Pl. Sur-reply, attachments).  But none of these attachments show how BAC is anything more than a creditor within the definition of the FDCPA, or how it has violated the provisions of the FDCPA.

In short, Dash has failed to plead facts to show that BAC is actually a debt collector within the meaning of the statute. Consequently, the action is subject to dismissal as a matter of law. *See, e.g.*, *Frederick v. Capital One Bank (USA), N.A.*, No. 14 Civ. 5460, 2018 WL 1583289, at *12 (S.D.N.Y. March 27, 2018) (dismissing FDCPA claims where plaintiff failed to establish that defendant was a debt collector).

Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and this action is dismissed. The Court has considered the remaining arguments raised by the parties, and to the extent they are not addressed herein, finds them to be without merit. The Clerk of the Court is respectfully directed to terminate Dkt. No. 29 and close this case.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      April 23, 2019
            New York, New York

Copies transmitted this date to all counsel of record and to:

John P. Dash III
Gotham BMG
420 Lexington Avenue, Suite 300
New York, NY 10170